UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAWANNA L. BURNETT, Plaintiff, | ) | |
| vs. | ) | No. 1:13-cv-00364-SEB-MJD |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Shawanna Burnett requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **AFFIRMING** the decision of the Commissioner.

## I. Procedural History

Burnett filed an application for DIB and SSI on January 25, 2010, alleging an onset of diability of January 14, 2010. Burnett's applications were denied initially on April 29, 2010 and on reconsideration on August 16, 2010. Burnett requested a hearing which was held on July 20, 2011 before Administrative Law Judge JoAnn Anderson ("ALJ"). The ALJ denied Burnett's applications on October 26, 2011. The Appeals Council denied Burnett's request for review on January 4, 2013. Burnett filed this Complaint on March 5, 2013.

## II. Factual Background

Shawanna Burnett was 34 years old on the alleged onset date of disability. She has a limited education and past relevant work as a warehouse worker, inventory clerk and stock records clerk. Burnett has a history of depression since at least 2007.

In January 2010, Burnett began treatment at St. Vincent Stress Center where she attended group therapy. Her Global Assessment of Functioning score ("GAF") was 44, indicating serious symptoms. She was discharged in March 2010 with a diagnosis of Major Depressive Disorder Recurrent, Moderate and Attention Deficit Hyperactivity Disorder ("ADHD"), Inattentive Type, Provisional. Her GAF at discharge was 56, indicating moderate symptoms. At discharge her treatment outcome was noted to be improved and her prognosis was good. Burnett's treatment notes at discharge indicated that the diagnosis of ADHD was still provisional, however Burnett continued to exhibit problems with memory, focus, and attention. She was referred to Indiana Health Group for follow up.

Burnett was treated by Robert Jeffries, Ph.D. at the Indiana Health Group from January 2010 through April 2010. Dr. Jeffries diagnosed Burnett with Major Depression, Recurrent and treatment notes indicated that Burnett's thought processes were logical and depression was improving.

Burnett had a consultative examination in March 2010 with state agency physician Allison McGinley, Psy.D. Dr. McGinley reported that Burnett exhibited slowed speech, but there was no evidence of thought disorder; her thinking was organized; and her impulse control, judgment and insight were found to be within normal limits. Dr. McGinley diagnosed Burnett with Depressive Disorder, Not Otherwise Specified ("NOS") and Anxiety Disorder, NOS.

State agency physician Donna Unversaw, Ph.D. completed a Psychiatric Review Technique in April 2010. Dr. Unversaw evaluated Burnett's impairments under Listings 12.04

Affective Disorders and 12.06 Anxiety Related Disorders and opined that Burnett's impairments did not meet or equal any listing under the listing of impairments. In evaluating the Paragraph "B" criteria required for mental disorders, Dr. Unversaw concluded that Burnett was not restricted in activities of daily living and only mildly restricted in social functioning and concentration, persistence or pace. Dr. Unversaw's assessment was affirmed by state agency physician Dr. Gange.

In June 2010, Burnett sought treatment at the Midtown Community Mental Health Center and was seen by Ernesto Carrasco, M.D. in July 2010. Her chief complaints included poor memory and poor concentration. Dr. Carrasco's medical impression was that Burnett exhibited generalized anxiety and residuals of attention deficit disorder. She began group therapy and continued in therapy through June 2011.

## III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her

reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Burnett had not engaged in substantial gainful activity since January 14, 2010, the alleged onset date. At step two, the ALJ found that Burnett had the following severe impairments: depressive disorder and anxiety disorder.

At step three, the ALJ determined that Capps did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

Next, the ALJ found that Burnett had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Burnett is limited to simple, routine and repetitive work that does not require more than occasional interaction with coworkers or the general public; Burnett is limited to work that consists primarily of independent tasks.

At step four, the ALJ determined that Burnett is unable to perform any past relevant work. At step five, the ALJ determined that considering Burnett's age, education, work experience, and RFC, there were jobs that existed in the national economy that Burnett could perform. Therefore, the ALJ determined that Burnett was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Burnett was not disabled. *Dixon*, 270 F.3d at 1176. Burnett raises three arguments on review: 1) substantial evidence fails to support the ALJ's step three determination; 2) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p, and 3) substantial evidence fails to support the ALJ's step five determination.

Burnett first argues that the ALJ erred at step three by not finding that Burnett's impairments met or equaled Listing 12.04 and for not obtaining an updated medical opinion. The burden is on the plaintiff to demonstrate that her impairments meet or equal all of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Burnett does not point to any evidence to support that she would meet a listing. The only support Burnett provides is her GAF scores. However, nowhere in the regulations is it required that an ALJ base her decision entirely on a person's GAF score. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

To the contrary, the ALJ supported her step three determination by relying on the state agency physicians' reports that determined that Burnett's impairments do not meet or equal any listing. In fact, the ALJ found that the medical record indicated Burnett to be more limited than what the state agency physicians assessed. However, the ALJ agreed with their ultimate conclusion that Burnett's impairments did not meet or equal a listing.

Burnett also argues that the ALJ erred by failing to obtain an updated medical opinion because the last agency review of the record was in August 2010 and thus they did not consider Burnett's treatment record from June 2011 [R. 396]. An ALJ is required to obtain an updated medical opinion where new evidence is received that, in the opinion of the ALJ, would change the state agency physician's finding that the impairment is not equivalent in severity to any

impairment in the Listing of Impairments. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Burnett does not point to anything in the June 2011 treatment record that would change the state agency physician's finding that Burnett's impairment did not meet or equal a medical listing. The Court likewise did not find anything that would change the state agency physician's opinion on medical equivalency. Therefore, the ALJ did not err by not obtaining an updated medical opinion and substantial evidence supports the ALJ's step three determination that Burnett's impairments do not meet or equal a medical listing.

Burnett next argues that the ALJ erred in her credibility determination because it is contrary to Social Security Ruling ("SSR") 96-7p. The only argument Burnett makes in this regard is again focused on the GAF scores. As discussed above, the ALJ is not required to base her decision entirely on a person's GAF score. Further, the ALJ gave more weight and credibility to Burnett than the state agency physicians. [R. at 16.] The remainder of Burnett's argument is waived as boilerplate language unsupported by record evidence typically found in counsel for the Plaintiff's briefs. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

Finally, Burnett argues that the ALJ erred at step five by positing a hypothetical that does not account for Burnett's difficulties in social functioning and concentration, persistence or pace. The hypothetical was based, in part, on the RFC. The Court finds that substantial evidence supports the ALJ's RFC determination. The RFC properly accounted for the medically documented limitations in concentration and social functioning by limiting Burnett to simple, routine and repetitive work that does not require more than occasional interaction with coworkers or the general public. Burnett does not point to any contrary evidence. Therefore, substantial evidence supports the ALJ's step five determination.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Burnett is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 11/25/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov